CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
11/20/2019
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | |
|---|---|
| APPALACHIAN POWER COMPANY,<br><br>*Plaintiff,*<br><br>v.<br><br>WAGMAN HEAVY CIVIL, INC.,<br><br>*Defendant.* | CASE NO. 6:19-cv-00051<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

## INTRODUCTION

Before the Court is Appalachian Power Company's ("APCO") Motion to Dismiss Wagman Heavy Civil's Counterclaim. Wagman pleads in Count I of its Counterclaim that APCO breached its written contract to remove and relocate its utility structures in order to facilitate a construction project that Wagman had undertaken as part of a contract with the Virginia Department of Transportation. Dkt. 4 at 12. Wagman alternatively pleads in Count II that APCO breached an unwritten contract between the two to complete the same construction project. *Id.* at 13.

APCO argues that Wagman's Counterclaim fails without an enforceable timeline for APCO's performance, because the written contract lacks a "time is of the essence" clause and any alleged communications outlining that timeline are prohibited from modifying the terms of the contract. APCO further argues that Wagman's Counterclaim does not plead sufficient factual allegations to support its claim for damages, because it fails to "specifically state" items of special damages as required by Rule 9(g) of the Federal Rules of Civil Procedure. APCO also contends that Wagman's obligations were conditions precedent to APCO's contractual performance, and Wagman's failure to allege the discharge of such conditions is fatal to the Counterclaim. As to

Count II, APCO argues that Wagman does not plead any facts that permit the finding of a reasonably certain, definite, and complete oral agreement between the two parties.

APCO's Motion to Dismiss, Dkt. 8, will be granted in part and denied in part, in accordance with this memorandum opinion. Count I of Wagman's Counterclaim will be dismissed without prejudice, and Wagman will be granted leave to amend its Counterclaim, pursuant to Federal Rule of Civil Procedure 15(a)(2).

## I. ALLEGED FACTUAL BACKGROUND

In January 2015, Wagman and Virginia Department of Transportation ("VDOT") entered into a contract to undertake design and construction of a project known as Odd Fellows Road Interchange at U.S. Route 29/460 and Road Improvements (the "Project"). Dkt. 4 at 12.

On May 24, 2017, APCO and Wagman entered into an alleged written contract (the "Written Contract"), "whereby APCO agreed to remove and relocate its utility structures (the 'Work') in order to facilitate construction for the Project." *Id.* Among other obligations, APCO specifically agreed to "[u]se its best efforts to complete the relocation of Structure Numbers 442-99, 442-100, 442-101, and install Structure 442-102A based on the completion of the conditions set forth in DESIGN-BUILDER items 1 through 4 above."[1] Dkt. 12, at Ex. A.

Wagman alleges that it and APCO "communicated regarding both the Project schedule and the schedule for APCO's performance of services under the Written Contract, and so had a mutual understanding as to the reasonable period for APCO to perform the Written Contract." Dkt. 4 at 12. Wagman further alleges that APCO failed to begin its obligation under the Written Contract

---

[1] Wagman failed to attach a copy of the Written Contract to its Counterclaim. As the Written Contract has been referenced in Wagman's Counterclaim and was attached to both APCO's Motion to Dismiss and Wagman's Memorandum in Opposition, the Court may consider the document in deciding this matter. *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006) (stating that courts "may consider . . . documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed.").

when directed, failed to perform such obligations within the schedule it provided, and failed to conform to the "parties' understanding of the period for performance of its services, or of the Project as a whole."[2] Dkt. 4 at 13. Accordingly, Wagman concludes that APCO breached its obligations under the Written Contract to "use its best efforts to perform the Work, to honor the covenant of good faith and fair dealing, to perform the Work within a reasonable time, and to perform the Work in accordance with the schedule for its performance of the Work." *Id.* Wagman alleges costs and other damages foreseeably resulting from APCO's breach in an amount of at least $1,039,074.20. *Id*.

Wagman also alleges that it and APCO entered into the alleged Unwritten Contract whereby "APCO agreed to remove and relocate its utility structures (the "Work") in order to facilitate construction for the Project, and in exchange Wagman would reimburse it for one-half of its cost of doing so." *Id.* at 13. APCO is claimed to have breached the Unwritten Contract when it "failed to commence its work when directed, [and] failed to perform within the schedule it provided for its Work." *Id.* at 14. Wagman similarly alleges that it and APCO "communicated regarding both the Project schedule and the schedule for APCO's performance of services under the Agreement, and APCO submitted a written schedule for performance of its Work to Wagman." *Id.* The Counterclaim contends that Wagman suffered directly and proximately from APCO's breach of the agreement by incurring "delay costs, and other damages foreseeably resulting from APCO's acts and omissions, in an amount of at least $1,039,074.20." *Id.*

On August 9, 2019, APCO filed its Complaint against Defendant/Counterclaim Plaintiff

---

[2] While Wagman further alleges that "by law, APCO was required to perform its obligations under the Written Contract within a reasonable time," *id.*, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," as Wagman has provided here. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Wagman. Dkt. 1. On September 4, 2019, Wagman filed its Answer along with its Counterclaim against APCO. Dkt. 4. On September 24, 2019, APCO filed a Motion to Dismiss Wagman's Counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 8. Wagman filed its Memorandum in Opposition to the same on October 8, 2019, Dkt. 12, making this matter ripe for disposition.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. This same standard of review applies to both claims and counterclaims. *Falls Lake Nat'l Ins. Co. v. Martinez*, No. 7:16-cv-00075, 2016 WL 4131995, at *2 (W.D. Va. Aug. 1, 2016). The counterclaim's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all of its allegations taken as true and all reasonable inferences drawn in the plaintiff's favor, *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 214.

Although the complaint or counterclaim "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (quotation marks omitted). This is not to say Rule 12(b)(6) requires "heightened fact pleading of specifics," instead the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."

*Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("only a complaint that states a plausible claim for relief survives a motion to dismiss").

### III.  ANALYSIS

Under Virginia law, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004).[3]

As to Count I, APCO argues that Wagman's Counterclaim insufficiently pleads a legally enforceable obligation as to the alleged timeline for APCO's performance, because the Written Contract does not contain a "time is of the essence" clause and any alleged communications outlining that timeline are prohibited from modifying the terms of the contract. Additionally, APCO argues that Wagman's Counterclaim does not plead sufficient factual allegations to support its claim for damages, because it fails to "specifically state" items of special damages as required by Rule 9(g) of the Federal Rules of Civil Procedure. APCO also contends that Wagman's obligations were conditions precedent to APCO's contractual performance, and Wagman's failure to allege the discharge of such conditions is fatal to its Counterclaim. As to Count II, APCO argues that Wagman does not plead any facts that permit the finding of a reasonably certain, definite, and complete oral agreement between the two parties. This memorandum opinion will address each of these arguments in turn, first addressing those arguments concerning Count I and subsequently dealing with those concerning Count II.

---

[3] The parties do not contend that any substantive law other than Virginia's governs the issues presented by the Counterclaim. *See, e.g.*, Dkt. 9 at 4; Dkt. 12 at 8.

A.  <u>Merger Clause and Modification Provision</u>

The Written Contract is silent as to the time period for the parties' performance and APCO's work schedule, indicating only that APCO will "use best efforts" to complete the work. APCO contends that the Written Contract's lack of a "time is of the essence" clause precludes a finding of breach for APCO's alleged delay in performance. But, under Virginia law, even where a contract does not contain a time is of the essence clause, a "delay in performance may still be deemed a breach of contract, justifying payment of damages." *MP Leasing Corp. v. Colonna's Shipyard*, No. 2:07-cv-273, 2009 WL 2581575 at *5 (E.D. Va. May 8, 2009).

Wagman has alleged that it and APCO "communicated regarding both the Project schedule and the schedule for APCO's performance of services under the Written Contract, and so had a mutual understanding as to the reasonable period for APCO to perform the Written Contract." Dkt. 4 at 12–13. Wagman, however, does not allege whether these communications occurred before or after the execution of the contract, and so it is not evident whether they should be analyzed in light of the Written Contract's merger clause or the provision restricting modification of the agreement to those "in writing, dated subsequent to the date of [the] Agreement, and duly executed by the Parties hereto." Dkt. 12, Ex. A, at 3.

Without any allegations as to the timing of the alleged communications, the Court will refrain from determining whether they should be analyzed in light of the merger clause or as a subsequent modification to the Written Contract. The Written Contract itself is silent as to the schedule for performance, and it has long been established under Virginia law that "when a contract is silent as to the time within which an act is to be performed, the law implies a reasonable time." *Grossman v. Saunders*, 376 S.E.2d 66, 70 (Va. 1989). And, as the Supreme Court of Virginia has indicated, "what constitutes a reasonable time is generally an issue to be decided by

6

a properly instructed jury, under all circumstances of the case." *Id.* (ruling that the trial court erred in sustaining demurrer). At least at this stage in the litigation, contrary to APCO's contention, Wagman need not provide additional allegations as to the schedule for performance in order to adequately plead its claim. *Id.*

B. <u>Damages</u>

APCO argues that Wagman has failed to sufficiently plead its demand for over a million dollars in damages. According to APCO, the only plausible way Wagman could reach such a sum is if Wagman were pleading "special" damages, Dkt. 9 at 8, which must be "specifically stated" pursuant to Rule 9(g). Fed. R. Civ. P. 9(g). This, APCO argues, Wagman has not done.

Special damages are those that "are not the 'ordinary result' of the conduct alleged." *Carnell Const. Corp. v. Danville Redevelopment & Housing Authority*, 745 F.3d 703, 725 (4th Cir. 2014). In Counts I and II, Wagman has pleaded that its damages are the result of "incurred delay costs, and . . . other damages foreseeably resulting from APCO's acts and omissions, in an amount of at least $1,039,074.20." Dkt. 4, at 13–14. Wagman alleges that such damages are the "direct and proximate" result of APCO's breach. *Id.* Nothing in Wagman's Counterclaim suggests that it is pleading anything other than ordinary damages. At this stage, Wagman is not obligated to prove the amount of its damages, it must merely plead them to Rule 8(a)'s satisfaction, which it has accomplished. *Fidelity Nat'l Title Ins. Co. v. Radford*, No. 7:15–cv–00018, 2015 WL 1581678, at *3 (W.D. Va. April 9, 2015) ("Moreover, Fidelity is not required to itemize its damages to meet the pleading requirements of Rule 8(a). The Radfords can request such itemization through discovery . . . ."). To the extent that Wagman has pleaded more than it can prove was the ordinary harm incurred as a result of the alleged breach, that is a matter to be decided later in the course of litigation. *See Carnell Const. Corp.*, 745 F.3d at 725.

7

C. Conditions Precedent to APCO's Performance

APCO argues that its obligation to relocate and install certain structures was conditioned on Wagman fulfilling its obligations under the Written Contract. Under the Written Contract, Wagman was obligated to "(1) pay fifty percent of the actual cost of relocation of Structure Numbers . . . after work is completed; (2) provide proposed layout for highway expectation and all supporting details, drawings and survey data; (3) obtain VDOT utility easements for the Transmission Line relocation on [certain parcels]; [and] (4) be solely responsible for paying the cost of acquiring all easements deemed necessary by APCO, including the cost of all title examinations and surveys." Dkt. 9, Ex. A at 3.

Under Virginia law, in order to discern whether the parties intended a contractual provision to act as a condition precedent or a mere promise, general rules of contract interpretation govern, and "the plain meaning of the contract controls." *Cox v. Snap, Inc.*, No. 1:16-cv-9, 2016 WL 5109518 at *4 (E.D. Va. Sept. 20, 2016). While no specific words are necessary to create a condition, words such as "'if,' 'provided that,' 'when,' 'after,' 'as soon as,' or 'subject to,'" are words recognized as those that "traditionally indicate conditions." *Standefer v. Thompson*, 939 F.2d 161, 164 (4th Cir. 1991). And, while conditions precedent are generally disfavored, the Court must construe contractual provisions as conditions where the plain language of the contract compels it to do so. *See id.*

The plain language of APCO's contractual obligations suggests that three of Wagman's obligations under the contract appear to be conditions precedent to APCO's performance. APCO's first obligation to "[u]se its best efforts to complete the relocation [work]" was "*based on the completion of the conditions* set forth in [Wagman's obligations]." Dkt. 9, Ex. A at 1 (emphasis supplied). The plain language of APCO's second obligation under the Written Contract further

8

reinforces this notion: "(2) [APCO agrees to] use its best efforts not to exceed the preliminary cost estimate as set forth in 'Exhibit C' hereto which is *similarly contingent upon the completion* of the conditions set forth in [Wagman's obligation items] above." *Id.* (emphasis supplied).

Wagman argues that the language of the contract makes it clear that its contractual obligations were not conditions precedent to APCO's performance. Dkt. 12, Ex. A. For support, Wagman points to its first obligation, which was to reimburse APCO for certain costs "after [APCO's relocation and installation] work is completed." Dkt. 12, at 7 (citing Dkt. 12, Ex. A, at 1). But Wagman's argument ignores that its other obligations could be performed before APCO began its work:

> (2) Provide proposed layout for highway expectation and all supporting details, drawings and survey data.
> (3) Obtain VDOT utility easements for the Transmission Line relocation on [certain parcels] . . .
> (4) Be solely responsible for paying the cost of acquiring all easements deemed necessary by APCO, including the cost of all title examinations and surveys.

*Id.* Wagman's Counterclaim provides no factual allegations contextualizing, let alone referencing, these other obligations under the Written Contract. Without any factual allegations from which to even draw an inference, it is difficult to overcome the conclusion that at least the easements referenced in Wagman's third obligation were necessary for APCO to begin its work. Taken together, the plain language of the Written Contract suggests that APCO's agreement to use its best efforts to fulfill its first two obligations under the Written Contract were conditioned on the completion of Wagman's obligations—or at least those that do not clearly indicate that they are triggered after the completion of APCO's work, such as the payment provision.

APCO argues that Wagman's failure to allege, even generally, that these conditions precedent were met or excused is fatal to its Counterclaim. Dkt. 9, at 4 (citing *Flippo v. F & L Land Co.*, 400 S.E.2d 156, 160 (Va. 1991)). But APCO's reliance on Virginia law's pleading

9

requirements is misplaced: federal pleading standards apply to this case. *Metra Industries, Inc. v. Rivanna Water & Sewer Authority, Inc.*, Case No. 3:12-cv-00049, 2013 WL 596064 at *2 (W.D. Va. Feb. 15, 2013).

Federal Rule of Civil Procedure 9(c) governs the pleading of conditions precedent, and "it suffices to allege generally that all conditions precedent have occurred or been performed." Fed. R. Civ. P. Rule 9(c). While the Fourth Circuit has not spoken to the issue, both the Eastern and Western Districts of Virginia have previously interpreted Rule 9(c) as imposing an obligation on a plaintiff—or, as in the instant case, a counterclaimant—to plead that each applicable condition precedent has been met or otherwise waived. *Metra Industries, Inc.*, 2013 WL 596064 at *2–3 (applying Rule 9(c) to determine whether Plaintiff's amended complaint satisfies its requirements); *Chesapeake Square Hotel, LLC v. Logan's Roadhouse, Inc.*, 995 F. Supp. 2d 512, 518 (E.D. Va. 2014) (same)).[4] Likewise, I view Rule 9(c) as imposing a pleading requirement for conditions precedent. By failing to plead *any* allegations as to whether such conditions precedent had been discharged, Wagman's Counterclaim has failed to pass Rule 9(c)'s muster. The Court, therefore, will grant Counterclaim Defendant APCO's Motion to Dismiss as to Count I, and it will grant Wagman leave to amend.

Wagman has sought leave to amend its Counterclaim in order to include such allegations. Dkt. 12 at 7. In this case, the Court entered an amended pre-trial order on October 8, 2019, stating "[t]he court shall consider a party's motion to amend pleadings in accordance with Rule 15 of the Federal Rules of Civil Procedure. Except for good cause shown, any such motion must be filed no later than 45 days from the date of this order." Dkt. 11 at 6. Wagman sought leave to amend its Counterclaim

---

[4] The Court takes note of Wagman's contention that "[APCO's] argument is easily addressed with a mere assertion by Wagman that it performed, or was excused from performing all conditions precedent." Dkt 12 at 7. Without deciding whether such a statement itself would be adequate, the Court observes that at least the Eastern District of Virginia—after a very reasoned analysis—has found that such conclusory pleading fails to pass muster under Rule 9(c). *Chesapeake Square Hotel, LLC*, 995 F. Supp. 2d at 516–20.

10

the same day, as part of its Memorandum in Opposition to APCO's Motion to Dismiss. Dkt. 12 at 7. Given this Circuit's "policy to liberally allow amendment," *Abdul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 293 (4th Cir. 2018) (internal citations omitted), and that Wagman seeks to amend within the forty-five-day period, the Court will grant leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2).

D. Count II: Breach of Unwritten Contract

1. *Alternative Pleadings Under Rule 8(d)(2)*

Counterclaim Plaintiff Wagman also pleads, in the alternative, that Wagman and APCO entered into an unwritten contract in or about May 2017, "whereby APCO agreed to remove and relocate its utility structures (the 'Work') in order to facilitate construction for the Project, and in exchange Wagman would reimburse it for one-half of its costs of doing so (the 'Agreement')." Dkt. 4 at 13. Wagman's factual allegations as to APCO's breach of the Unwritten Contract are that it "failed to commence its work when directed, [and] failed to perform within the schedule it provided for its Work." *Id.* at 14. Wagman pleads this claim "in the alternative to Count One, in the event the agreement attached to this Counterclaim as Exhibit 'A' is found to be void and unenforceable." Dkt. 4 at 13.[5]

If the Written Contract is found valid and enforceable, of course, its merger clause would plainly invalidate any alleged unwritten contract encompassing the same agreement that took place

---

[5] The Court notes that Counterclaim Defendant APCO has already acknowledged that the Written Contract referred to in Wagman's Counterclaim is a valid, enforceable contract, Dkt. 1 at ¶ 28, and Wagman necessarily takes this position as an element of its breach of contract claim under Count I against APCO. *See Filak v. George*, 594 S.E.2d at 614.

The existence of a valid contract is a question of law in Virginia. *Spectra-4 LLP v. Uniwest Commercial Realty, Inc.*, 772 S.E.2d 290, 293 (Va. 2015). As it is a question of law, the Court cannot apply the doctrine of judicial estoppel to any later argument to the contrary. *1000 Friends of Maryland v. Browner*, 265 F.3d 216, 226–27 (4th Cir. 2001) ("In this circuit, we generally require the presence of the following elements before we will apply the doctrine of judicial estoppel: First, the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation. And the position sought to be estopped must be one of fact rather than law or legal theory. Second, the prior inconsistent position must have been accepted by the court . . . .").

before the Written Contract's execution. Further, to the extent the unwritten agreement took place after that point, there is not even a bare allegation that it superseded the Written Contract, let alone factual allegations to support such a claim. *Cf. MSSI Acquisition, LLC v. Azmat Consulting, Inc.*, 2012 WL 2871158 at *7 (E.D. Va. July 12, 2012) (finding bare allegation that oral agreement superseded or rescinded an earlier written contract to be no more than a mere legal conclusion).

But, at least on its own, inconsistency between the legal theories posited in each of Wagman's two counts does not mandate dismissal of either or both claims. Fed. R. Civ. P. R. 8(d)(2) (permitting a party to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones"); *see Son v. Coal Equity, Inc.*, 122 F. App'x 797, 801–02 (6th Cir. 2004) (finding that the Federal Rules of Civil Procedure permit the pleading of a claim for breach of written contract and a claim in *quantum meruit*, despite the validity of the written contract in the case not being contested and *quantum meruit* claims requiring the absence of an express contract between the parties); *Thimbler, Inc. v. Unique Solutions Design, Ltd.*, No. 5:12-cv-695, 2013 WL 4854514 at *6 (E.D.N.C. Sept. 11, 2013) (same).

Despite this, inconsistency between the claims may have an impact in determining the plausibility of a counterclaim or complaint. *Williams v. Autozone Stores, Inc.*, No., 3:09-cv-255, 2009 WL 3837281 at *2 (E.D. Va. Nov. 13, 2009). Further, Rule 8(d)(2)'s allowance for inconsistency is limited to that between legal theories, it does not extend to inconsistencies between factual allegations. *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 594 (2d Cir. 2005); *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 617 (E.D. Va. Sept. 9, 2005). The existence of a valid contract is a question of law in Virginia. *Spectra-4 LLP v. Uniwest Commercial Realty, Inc.*, 772 S.E.2d 290, 293 (Va. 2015). Thus, despite the inconsistency that lies

between Count II's claim of a valid oral contract and Count I's claim of a valid written contract, such alternative pleadings are permitted under Rule 8(d)(2).

2. *Sufficiency of Count II Under Rule 8(a)(2)*

Under Virginia law, Wagman must allege: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak*, 594 S.E.2d at 61. Wagman has done just that. It has alleged a bargained-for exchange that resulted in a legally enforceable agreement. Dkt. 4 at 13. It has alleged APCO's breach of that obligation and the acts or omissions that constituted that breach. *Id*. Lastly, Wagman has pleaded that it suffered direct and proximate harm as a result of APCO's breach in the amount of $1,039,074.20, citing delay costs. *Id*. Wagman has also pleaded the approximate date of the agreement and the context in which it arose. *Id.* at 12–13.

APCO claims that more specificity is required of Wagman's pleading, citing to the Supreme Court of Virginia's remark that "an agreement, in order to be binding, must be reasonably certain, definite, and complete to enable the parties and the courts to give the agreement exact meaning." Dkt. 9 at 9 (citing *Smith v. Farrell*, 98 S.E.2d 3, 7 (Va. 1957)). But even if the pleading requirements for federal courts sitting in diversity were governed by state law—which, of course, they are not—the cited material refers not to what a claimant must *plead*, but to what they must *prove*. *Smith*, 98 S.E.2d at 7 ("Whether the evidence establishes that a reasonably certain, definite and understandable contract was settled upon and entered into between the parties and thereafter breached by defendant is the ultimate question to be determined."). In any event, under Rule 8(a), Wagman need only plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Indeed, as Wagman has pleaded facts that support a finding of each

element in a cause of action for breach of contract under Virginia law, Wagman has satisfied Rule 8(a)'s demands. Wagman would have done well to add more specific allegations as to the contents of this agreement, but Virginia contract law merely requires that "the standard elements of offer, acceptance, and consideration for the formation of a valid contract," which Wagman has done here. *Castillo-Gomez v. Convenience Car Care Center, Inc.*, No. 1:14-cv-651, 2014 WL 3544839 at *2 (E.D. Va. July 17, 2014) (noting that a plaintiff "need not plead all the specific details underlying an alleged breach of contract to state a claim"); *Hill v. Alstom Power, Inc.*, No. 3:13-cv-00496, 2013 WL 6408416 at *2 (E.D. Va. Dec. 6, 2013) (finding Plaintiff sufficiently stated a plausible claim for breach of oral contract with similarly basic allegations).

Neither party has contended that any conditions precedent were included in the Unwritten Contract. Further, Wagman did not incorporate into Count II any of the factual allegations from either Count I or elsewhere in the Counterclaim. As such, the Court will not grant the Motion to Dismiss as to Count II on the same ground.

Finding, as to Count II, that Wagman has met the plausibility requirements set forth by Rule 8(a), the Court will deny APCO's Motion to Dismiss as to that count. *See* Fed. R. Civ. P. 8(d) ("If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."). Despite this, the Court feels the need to emphasize that Wagman ultimately cannot doubly recover for the APCO's breach if Count I of its Counterclaim is later amended and moves to later stages of litigation. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) (stating that it "goes without saying that courts can and should preclude double recovery").

## CONCLUSION

Counterclaim Defendant APCO's Motion to Dismiss, Dkt. 8, will be granted in part and denied in part, in accordance with this memorandum opinion. Counterclaim Plaintiff Wagman's

Count I will be dismissed without prejudice. Wagman will be granted leave to amend its Counterclaim, pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure. A separate order shall issue.

Entered this 20th day of November, 2019.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE